IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| ALBERT J. HALL, JR., Conservator and Power of Attorney for and on behalf of ALBERT J. HALL, III, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:05-CV-252 ) |
| HAWKINS COUNTY TENNESSEE, and WARREN D. RIMER, in his official capacity as SHERIFF OF HAWKINS COUNTY, TENNESSEE, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

According to the complaint in this case, Albert J. Hall, III ("plaintiff" or "Jimmy Hall") is a moderately mentally retarded man who was sexually assaulted by a cellmate while a pretrial detainee at the Hawkins County Jail in Rogersville, Tennessee. Plaintiff seeks damages under 42 U.S.C. § 1983, contending that "it was at all times material the official policy, custom and practice of Defendant Hawkins County not to adequately instruct, train and supervise its officers in proper procedures, techniques and protocol for the detention of moderately mental [sic] retarded individuals and to protect them from sexual assault from [sic] fellow prisoners." [Doc. 1, ¶ 16]. According to plaintiff,

the jailers were not properly trained in the art of prisoner classification and the county possessed no real or meaningful classification plan. . . .

. . .

The position of Jimmy Hall in this litigation may be simply stated as follows: Hawkins County's failure to implement a classification process for special needs prisoners such as Jimmy Hall constituted deliberate indifference to his constitutional rights. The failure by Hawkins County to implement a classification system of prisoners was the direct causal link for the unconstitutional depravation which has given rise to Hall's cause of action.

[Doc. 42, p. 14]. Plaintiff also seeks damages under a state law negligence theory.

Now before the court is the motion for summary judgment filed by defendants Hawkins County, Tennessee and Warren D. Rimer.[1] Plaintiff has responded to the motion, and defendants have submitted a reply. For the reasons provided herein, the motion will be granted and this case will be dismissed.

I.

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate

---

[1] Defendant Rimer is sued only in his official capacity as sheriff. Claims against Rimer in his official capacity are in fact claims against Hawkins County. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

2

burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See Liberty Lobby,* 477 U.S. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id.* at 251-52. "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).

II.

*Background*

Plaintiff was arrested September 16, 2004, on multiple assault charges. He was taken to the Hawkins County Jail and initially housed in a "visitor's booth." Approximately two days later he was moved to a cell in "B Block." Both B Block and visitor's booths are

used by the defendants to house persons who cannot be placed in the general jail population. [Doc. 40, ¶¶ 3, 5].

Plaintiff was moved to B Block because the visitor's booths did not contain toilets, and plaintiff would urinate on himself rather than ask to be taken to the restroom. Plaintiff was placed in a cell with two other pretrial detainees, James Dickerson and Larry Shelton. Plaintiff was not placed in the general population due to mental retardation and feminine characteristics. [Hutson dep., p. 45]. Dickerson was not in the general population for mental health reasons. [*Id.* at 46-47, David Aff., ¶ 5]. Shelton was not in the general population due to "the seriousness of his charges" (first degree murder), because he was "a jailhouse snitch," and because he "appeared to have mental health problems." [*Id.*]. Plaintiff, Dickerson, and Shelton were housed in the cell closest to the jailers' office. Plaintiff and Dickerson have testified that, after being moved to B Block, plaintiff was sexually assaulted by Shelton multiple times.

According to the affidavits of Hawkins County Jail administrator Deborah David and corrections officer Timothy Hutson, Shelton had been in the Hawkins County Jail for the previous six months and they were not aware of any previous sexual misconduct by him. [David Aff., ¶ 10; Hutson Aff., ¶ 7]. Plaintiff, following a prior arrest for disorderly conduct and assaulting an officer, had been housed with Shelton in April 2004 with no reported problems. [David Aff., ¶ 11; Hutson Aff., ¶ 11; Davis Aff., ¶ 6]. Plaintiff stands 6' 2" tall and weighs 240 pounds. Shelton is 5' 5" tall and weighs 160 pounds. [David Aff., ¶

4

12].

Plaintiff has submitted the report of penologist Eugene Miller. Mr. Miller concludes in material part:

> Mentally retarded persons, regardless of physical stature, are extremely vulnerable to predation of all sorts in a jail or prison setting. . . . In Jimmy Hall's case his potential for victimization was significantly enhanced by his obvious feminine physical traits, e.g., female breasts. In an all-male living environment, in which some men faced the prospect of spending many years without sexual access to women, Jimmy Hall was an early holiday present. . . .
>
> . . .
>
> One major way of affording an acceptable level of protection from harm, especially for people like Jimmy Hall, is through a process known as classification. At its most basic, classification is nothing more than the separation of inmates into similar groups based on a variety of criteria. Over the years, classification has evolved into a rather sophisticated system, that places major emphasis on past and potential behavior. The Hawkins County Jail's classification procedure can politely be described as "primitive" in contrast to generally accepted classification systems in use in 2004. . . .
>
> . . .
>
> Despite having a wholly inadequate classification policy and procedure, given the inherent limitations of the jail's physical plant in combination with the extent of overcrowding, jail staff placed Jimmy Hall in the right cellblock. In contemporary parlance, that decision was a "no-brainer." However, jail officials then deliberately chose to ignore Jimmy Hall's obvious and well known need for protection from harm by placing him in a cell with two (2) other inmates, one of whom was facing many years in prison on a 1st degree murder charge. From a penological perspective, placing Jimmy Hall in a cell by himself was also or at least should have been another "no-brainer." Instead staff abandoned Jimmy Hall to the vicissitudes of cellblock life and, in effect, served him up to more experienced inmates for their amusement.
>
> . . .

5

> Given the limitations of the jail's physical plant, if officials could not have housed Jimmy Hall securely (though not in isolation), then they should have transferred him to another jail that could, as the jail regularly did with inmates with contagious diseases. Obviously, if Jimmy Hall had been transferred to another, more suitable jail, then he would not have been sexually assaulted in Cellblock B of the Hawkins County Jail.

[Doc. 42, ex. B].

Mr. Miller also labels plaintiff "a hermaphrodite." While that statement is not supported by the record and is not even alleged by plaintiff, Dickerson testified that plaintiff's chest "looked like a woman," and officer Hutson testified that plaintiff "has breasts." [Dickerson Dep., p. 14; Hutson Dep., p. 45].

The limited formal classification policy of the Hawkins County Jail is found in its Policy and Procedure Manual and provides in full, "All inmates booked into the facility shall be classified based on their charge. This classification shall be completed each time the inmate is admitted to the facility." [Doc. 42, ex. C]. Ms. David serves as "classification coordinator . . . to oversee placement of inmates within the cell block . . . [w]ith our limited resources." [David dep., p. 24-25]. Ms David has not received classification training by the Tennessee Corrections Institute ("TCI"). [*Id.* at 21-22]. She testified that prisoner safety is addressed as a "common sense type thing" regarding "special needs" prisoners - those who are mentally or physically impaired. [*Id.* at 21]. Corrections officer Hutson testified that he has not received training in identifying special needs prisoners or "dealing with people who are handicapped or retarded." [Hutson dep., p. 32-35].

The TCI inspected the Hawkins County Jail in June 2004. In material part, the inspection report comments, "Insufficient space to classify inmates with communicable disease. . . . Insufficient classification plan. . . . Develop a classification plan to get inmates off the floor." [Doc. 42, ex. E]. An August 2004 reinspection report, in material part, comments, "No space to properly classify. Recommend that inmate/officer safety take priority. Suggest reviewing and revising policy & procedures on their classification plan. . . . Plans to relieve the overcrowding conditions are being discussed." [Doc. 42, ex. F].

Glenda Davis, records custodian of the Hawkins County Sheriff's Office, reviewed the jail incident reports from 2003 and 2004. There were no reports of sexual misconduct other than the incident between plaintiff and Shelton. [Davis Aff., ¶ 7]. According to corrections officer Hutson,

> Prior to the September 24, 2004 incident, I had worked at the Hawkins County Jail for approximately eleven (11) years. During that period of time, there was never a problem with inmates having sexual relations or with inmate sexual assaults. In fact, I cannot remember any other allegation of inmates having sexual relations or an inmate sexual assault prior to this incident.

[Hutson Aff., ¶ 8].

### III.

### *Analysis*

Through his own testimony and that of James Dickerson, plaintiff has raised a genuine issue of fact as to whether he was sexually assaulted. There exists a substantive due process right to personal security and bodily integrity, *see Doe v. Claiborne County,*

7

*Tennessee*, 103 F.3d 495, 506 (6th Cir. 1996), and persons in custody "enjoy[] constitutionally protected interests in conditions of reasonable care and safety[.]" *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982).

As noted in the introductory section of this opinion, plaintiff seeks damages under 42 U.S.C. § 1983 for defendants' alleged failure to train its officers via a proper prisoner classification policy.[2] "To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A municipal policy or custom alleged to result in inadequate officer training "may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added). Deliberate indifference may be found in a "'deliberate' or 'conscious' choice by a municipality," or where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to

---

[2]

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

the need." *Id.* at 389-90; *accord Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994).

Deliberate indifference is "a stringent standard of fault." *Bd. of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). A plaintiff generally "must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).[3]

Plaintiff has not presented evidence that would establish a genuine issue of material fact regarding prior instances that would have placed the defendants on notice. The uncontroverted testimony and affidavits of Hutson, David, and Davis show that defendants were unaware of any prior sexual misconduct by Shelton or any other person in the jail. Similarly, no other evidence offered by plaintiff raises any question as to whether defendants were on notice of any other type of prior assault resulting from the allegedly deficient classification process. *See Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005) ("[T]here is no evidence of similar incidents having previously occurred at the Correctional

---

[3] Were this instead viewed as a "failure to *protect*" rather than "failure to *train*" case, plaintiff would nonetheless be required to demonstrate a genuine issue of material fact regarding defendants' deliberate indifference. *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989).

9

Facility such that the County would be on notice of the danger of constitutional violations. Under such circumstances, the District Court did not err in concluding that the County was not 'deliberately indifferent[.]'").

Nor has plaintiff raised a genuine issue of material fact as to whether the deficiencies in defendants' classification process were so "obvious" as to amount to deliberate indifference. Through his summary judgment response, plaintiff invites the court to take judicial notice of reports generated by the United States Department of Justice, the National Prison Rape Elimination Commission, and Yale Law School. These reports are cited as evidence of the potential for sexual assaults in the prison setting. Plaintiff has presented, however, no evidence that defendants were aware of these reports. Further, plaintiff does not describe the reports as addressing specifically the sexual assault of mentally retarded detainees or males with "feminine chests." *See Gray v. City of Detroit*, 399 F.3d 612, 619 (6th Cir. 2005) (disregarding reports that were insufficiently on-point).

As for the TCI inspections, the court concludes that they too do not raise a genuine issue of material fact. While the TCI reports refer in a general manner to "insufficient classification plan" and "inmate/officer safety," those remarks are found in the context of overcrowding and communicable disease. The reports cite no prior instances relating to the classification process. As relevant to this case, the state recommendations appear to be more proactive than remedial. The reports are thus not probative evidence of an "obvious" constitutional problem (in the context of the present case) such as to put

10

defendants "clearly on notice" with a "high degree of predictability" of a "particular glaring omission" in training that would lead to a "plainly obvious consequence." *Brown*, 520 U.S. at 409-11.

The court notes that to some extent plaintiff argues that the county's alleged failure to train, in and of itself, constitutes deliberate indifference. However, merely "supplying expert testimony that the [defendants'] practice is inadequate and poses a risk to inmates does not support the conclusion that the [defendants] acted with deliberate indifference . . . , though it might support the conclusion that the [defendants were] negligent." *Perez v. Oakland County*, 466 F.3d 416, 431 (6th Cir. 2006). "[S]imple or even heightened negligence" is insufficient to impose municipal liability under § 1983. *Stemler*, 126 F.3d at 865 (citations omitted).

IV.

*Conclusion*

Because plaintiff has not demonstrated a genuine issue of material fact as to deliberate indifference, defendants' summary judgment motion will be granted and the § 1983 claim will be dismissed. Because the only claim over which the court has original jurisdiction has been dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claim. *See* 28 U.S.C. § 1367(c)(3); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Plaintiff's state law negligence count will be dismissed without prejudice. *See* 28 U.S.C. § 1367(d).

An order consistent with this opinion will be entered.

ENTER:

    s/ Leon Jordan    
United States District Judge